Good morning, your honors. Sydney Rush with the Law Offices of David Sildorff. May it please the court, I am appearing on behalf of the appellant, Mr. Willie Mickey. I would please like to reserve two minutes for rebuttal and I will keep an eye on my time. It was improper for the district court to deny Mr. Mickey's motion to reduce his sentence based solely on policy statement 1B1.10. This policy statement should not have been treated as binding. To do so, unconstitutionally stripped the district court judge, in this case, Judge Moskowitz, at Mr. Mickey's resentencing hearing of any discretion to evaluate a defendant as an individual under the standard 3553A factors. The district court seemingly recognized his own lack of discretion and called out this precise issue. And although Judge Moskowitz ultimately denied Mr. Mickey's motion to reduce his sentence, finding that it was barred by policy statement 1B1.10, Judge Moskowitz's actions and the record essentially opened the door for this issue on appeal. Just to give the court a few examples of that, as the record reflects, Mr. Mickey originally submitted a letter requesting compassionate release and Judge Moskowitz decided to interpret that letter as a motion to reduce his sentence under 18 United States Code 3582C2. Mr. Mickey originally appeared pro se. Judge Moskowitz ultimately reappointed his original attorney and then appointed a new attorney finding there to be a conflict and even stated on the record, perhaps your lawyer can come up with an argument here. So, Mistretta, you know, said that this whole regime where you have the sentencing commission, they adopt some guidelines and policy statements and then more of it was binding but now only it's only binding in certain circumstances, that that regime was constitutional. You have a particular application of that, but why isn't your challenge basically resolved by Mistretta? Mr. Mickey's argument here is about the language in the statute and the inherent restrictions on the agency's authority. We argue that in Mistretta it offered a much more comprehensive scheme for the sentencing commission, whereas here the language of the statute essentially creates an ambiguous question as to which policy statements are consistent with their own policy statements. But it's all, I mean, we said recently in Pheasant that when you're considering a non-delegation challenge you have to look at the whole, you know, not just the particular provision that's being applied but the entire statutory scheme and we have a statutory scheme that prescribes some principles for what the commission is supposed to be trying to do and the policy statement adopted here was, you know, adopted in pursuance of those broader principles. So why is that not enough? We argue under LOPR now that discretion as to determine an ambiguous language in a statute should be up to the court, not so much to the agency itself, in this case the sentencing commission, and so under the new standard under LOPR it should be up to the court to determine whether or not the language policy statements consistent with policy statements is ambiguous or not and they should be binding. And so Minstrada did not consider the new holding under LOPR that that discretion should lay with the court and not with the agency in itself to determine its own level of discretion. And we argue that the issue that was recognized by the district court is the same issue that's now before your honors today. Whether policy statement 1B1.10 is the product of an unconstitutional delegation of legislative power given to the sentencing commission that now infringes on the judiciary sentencing powers. This argument is based on two main points. The first is that the underlying statute here, 18 United States Code 3582C2, is ambiguous. It provides no intelligent principle for policy statements like 1B1.10 to be binding on the district court. And the second is that recent Supreme Court decisions like LOPR limit an agency's power to reinforce the argument that policy statements like 1B1.10 are binding. And why is the intelligible principle not the principles of sentencing articulated in section 3553? The intelligent principle holds that delegation of such legislative authority must clearly define the scope, purpose, and limits. And we hold that the statute at issue here does not define the scope, purpose, and limits of who may receive. Not how many reductions may be applied and to the extent of how much they can be applied, but essentially to who may receive them. Why doesn't 3553 illuminate that? When the commission sets out to write a policy statement defining who's eligible for a reduction, it should try to define a class of people such that giving them reductions will advance the purposes of, you know, reflecting the seriousness of the offense, et cetera, et cetera. Why isn't that? I mean, that's a principle that's in the statute. Yes, and we believe that the policy statement at issue here essentially conflicts with 3553A because under 3553A, the essence behind that is to treat the defendant as an individual and to look at the circumstances of their offense, what would be a just punishment here, whereas policy statement 1B1.10 essentially conflicts with that in saying that if they received a sentence that was below the amended guideline range, they can no longer be considered under 3553A factors, which is what the court ruled here in denying the motion is that because it was barred by 1B1.10, it could not go further and consider the 3553A factors. I guess we have not considered the specific argument that you're making, but a number of other courts of appeals have, and has any of them accepted it? There is a circuit split right now that is before the Supreme Court. On this issue? Have they granted cert on the issue? They've granted cert on several cases. There's Rutherford v. United States, Carter v. United States, and Bricker, and these all concern the issue as to whether the guideline here can direct a change in law and is essentially binding. And so it is an issue before the court, and we argue that the interpretations under Loper now show that an agency should not be able to determine the limits of its own discretion and interpret an ambiguous statute. Has any court of appeals accepted the argument that the statute is an unconstitutional delegation? I didn't think that there was a case that... I cannot think of one on the top of my head. And so we agree here that Congress gave the Sentencing Commission limited authority under the guidelines. That limited authority allows them to decide revisions, whether they should be retroactive or not, but that authority here is limited, and at some point there must be a limit to the commission's level of discretion as to not allow it to simply create its own rules. And we believe that's exactly what the policy statement at issue is doing here, is creating a binding rule on district courts at sentencing. And with that, I would like to preserve my time. All right. Thank you, counsel. Thank you. Good morning, Your Honors. May it please the Court, Mark Rahe for the United States. Your Honors, the district court did not err here. As Judge Miller pointed out, the test is whether there's an intelligible principle when Congress delegates authority, and it's an exceedingly modest limitation under this court's precedent. The government would submit 28 U.S.C. 994. There's three separate subsections, A2, O, and U, more than provide that intelligible principle. Specifically, 994A2 says that the policy statements that specifically govern sentence modification, which is what's at issue in this case, must be consistent with 3553A2, and those are very specific, has to reflect seriousness of the offense, promote respect for the law, just punishment, adequate deterrence. That is a cabined limit on the discretion of the commission. And then subsection O of 994 directs the commission to periodically review and revise the guidelines based on input from criminal justice system stakeholders. And finally, 994U specifically gives the sentencing commission the power to specify in what circumstances and by what amount sentences may be reduced by the guideline amendments. As Judge Miller pointed out earlier, in Mistretta, the entire sentencing, the SRA was under that kind of a scope, and what the Supreme Court basically held was that that even exceeded the intelligible principle, because you're building an entire commission, and it has all levels of specificity. What we are saying here is this is just one subset of that same statutory scheme that was already approved, and I know the defense raises questions whether these policy statements can be binding. Not only is that evident from 3582C2's language, the Supreme Court in Dillon, which was after Booker, specifically held as much that these policy statements are binding. Now, one argument that the defense has brought up is with Loper-Bright, and as we all know, that was a C-change case that upended or ended Chevron deference. The government's position today, to make it absolutely clear, is this is not a Chevron deference case. Chevron deference comes into play when there is a gap in a statutory scheme, an ambiguity, and it used to be the rule that Congress would presume to the agency the right to fill that in. This is an express delegation. Even Loper-Bright itself separates that out, and it says in cases of express delegation, the court should uphold that delegation as long as it's within the cabinet authority. And here, again, I know, Judge Miller, you asked, the government's not aware. I did another Westlaw search. We're not aware of any other circuit, and we cited eight circuits in our brief that have gone the government's way on this issue. We're not aware of any other one that has reached a contrary conclusion. Now, one thing I do want to mention is this Sixth Circuit Bricker case, which the defense mentioned in their presentation. It's also in their reply brief. That is a separate, that's 3582C1. That's compassionate release, and that was a situation where, you know, you have to have an extraordinary and compelling reason for statutory, for early release. What the Sixth Circuit had held in a case called McCall, they said the non-retroactivity of subsequent changes in the law is not extraordinary and not a compelling reason. And then what happened was that a different policy statement than the one that's issued in this appeal, the Sentencing Commission went contradictory to that. So basically, the Sixth Circuit in Bricker, or the Sixth Circuit had said that particular policy statement means X, and then the Sentencing Commission came out with a policy statement that said not X. And what Bricker said then was that when you have a prior judicial construction and it is unambiguous, the Sentencing Commission cannot contradict that. And again, that's all under a different policy statement for 3580C1. We're talking about C2 here. There is no allegation that the policy statement is contradictory to any language in the statute. There is no prior court that has held as much. So the government's position would be that Bricker does not control for that reason. And I know that defense counsel mentioned the case, the Supreme Court gestured argument in a case called Rutherford. That was the 3582C1 compassionate release issue. That, again, is just, you know, it's different. It's not the same statute at issue in this appeal. And so the reasoning of the court there should not give this panel pause to bring this, the Ninth Circuit, in line with the other eight circuits that have ruled this way. And, you know, the last thing I wanted to point out, too, is just I know that the defense's position is that the Sentencing Commission shouldn't be given the right to exclude an entire class of defendants from subsequent changes to the law. But even they recognize in the reply brief that the Sentencing Commission has the ability in the first instance to determine if an amendment guideline will be retroactive or not. The government would point out that is the ultimate determination of an entire, like, the only reason we're here is because 821, the commission said, we find it retroactive. Had they chosen not to make it retroactive, we wouldn't be standing here. There'd be no dispute. And the defense concedes that the Sentencing Commission has that authority. So unless the court has any other questions. I just find this whole area really bizarre because when the Sentencing Commission first issued the sentencing guidelines and made them mandatory, the district courts across the nation said, no, you know, you're intruding into our core judicial role. Brought it up to the Supreme Court. That was Mistretta Wright upheld the binding mandatory nature of the sentencing guidelines. Then we get, come to Booker and then I think Justice Scalia is the one who led the way on saying it has to be, they can only be advisory because you're, right? And now we come to the present day and the sentencing guidelines are advisory. But Congress has seemed to allow policy statements to be binding. And it just seems anonymous to me that this would be the case. This is where we are. I think it's likely to change, you know, because it's just inconsistent. And I don't know if our court is the one who's going to change it, but it seems likely that this isn't going to stand up. And I, and the government takes your point, Your Honor. It is a little unusual. And if I didn't have President-like Dillon basically already holding, agreed that this one aspect of the law is binding, but, you know, the only thing I would just point out to as far as the Court's concerned, again, without a doubt, individualized sentencing is a core judicial function. But this is not a sentencing proceeding. It's not even a full re-sentencing. Why shouldn't the judge, I mean, he's got the defendant before him. He knows the history of the case. You know, if it's relative that the sentence should be lowered X amount, why shouldn't the district court judge be able to exercise his full authority in considering all the factors and go below the low end of the guidelines, which are not mandatory, in considering this particular person, especially after they've already been serving time and you can take into account their, how they behave during prison and, you know, what kind of character they've, they've shown, if they're marching toward rehabilitation or not. It just isn't, it doesn't seem right. I mean, I, I understand what the state of the law is, but. Right. And you know what, again, that's not an unreasonable observation, Your Honor. The only thing I would note as well is that, you know, this defendant, I mean, he, his original sentence of 206 months was substantially below. Yeah, I thought it was 204, but. Or 204, but. It was a downward variance of 88 months. But I, you know, I think maybe what the commission might think, because the, the original guideline range was 292 to 365, then amended, it's 262 to 327. But he basically got the incredible break front-ended. So, you know, but I agree, Your Honor. Those statements are not unreasonable, but we stand on the law as it is. Right, okay, well, thank you. Nice to see you again. I appreciate it, Your Honor. Thank you. To repeat what the government just said, we stand on the principle that the law is what the law is changing, and I believe that's what the panel's comments reflect, is that 3553A, essentially, the core of that is that sentencing should be an individual decision left to the judges. And I think that that's reflected here in the record as to Judge Moskowitz and what actually happened at sentencing. Looking back, the government is correct that he received a sentence of 204 months that was substantially below the guideline range. However, it is critical that his criminal history score was higher, and perhaps Judge Moskowitz took that criminal history score into consideration when not giving him the mandatory minimum, 180 sentence. And to note, probation in Mr. McKee's case did ask for a sentence lower, closer to that mandatory minimum, 188. And the difference now that his guideline range has been amended is the difference of 24 months, which is essentially two years in custody. And one's liberty, one's freedom and length of incarceration is a highly protected constitutional right that should be left in the power of the judiciary, and we do believe that the commission is exceeding its legislative authority here. Thank you. Thank you very much, counsel. United States v. McKee will be submitted.
judges: WARDLAW, IKUTA, MILLER